## Union Savings Bank & Trust Co. *v.* City of Jackson.

[84 South. 288, In Banc. No. 21047.]

1. Municipal Corporations. *Special assessment law for street improvements held not unconstitutional as failing to provide for the redemption of property sold.*

Chapter 260, Laws 1912, providing for street and sidewalk improvements, and for special assessment against the property owners adjoining said street, is not unconstitutional for failure to provide a scheme for redeeming property sold at such sales, as section 79 of the Constitution of 1890 confers the right to redeem, subject to legislative conditions, and. if the legislature does not impose conditions, the right to redeem may be enforced in equity.

2. Constitutional Law. *Law enabling majority owners to defeat a special assessment does not deny equal protection.*

Section 8, chapter 260, Laws 1912, giving the right to resident owners occupying property on a street to be improved by special assessment to defeat the work by a majority of the residents in such street petitioning against the work, is a limitation on the power of the city to make the improvement in the nature of a veto, legislative in its nature, and does not deny the equal protection of the law to nonresidents. It is equal protection of the law, and not the equal right to make laws, that the fourteenth amendment to the federal Constitution provides.

3. Constitutional Law. *Municipal corporations. Law giving hearing on objection to proposed improvement and an appeal to the courts provides due process.*

Chapter 260, Laws of 1912, does not deprive one of property without due process of law. Section 9 thereof gives all property owners, whether resident or nonresident, an opportunity to appear and object to a proposed improvement to be made by special assessment, and section 21 thereof gives the right to be heard in objection to the assessment to be made against the owner of the property, and section 22 thereof gives the right of appeal to the courts, and thus constitutes due process of law under the fourteenth amendment to the federal Constitution.

4. MUNICIPAL CORPORATIONS. *Where no appeal is taken from a special assessment under the statute, it is final.*

Section 22, chapter 260, Laws 1912, giving the right of appeal from a special assessment made, after notice to property, owners, by municipal authorities with right to trial on such appeal, is exclusive, and, if no appeal is taken, the assessment is final and binding on the owner.

5. TAXATION. *Sale for taxes does not discharge the lien for special improvement under chapter 260, Laws 1912.*

Where a party took a deed of trust after the enactment of a law providing for special assessment for street improvement, and providing that such special assessment shall be a lien superior to all other liens save for county and state taxes, the lienholder cannot defeat the lien for special assessment by permitting the property upon which such lien exists to be sold for state and county taxes. and buying such property in at such sale. In such case he takes the property charged with such lien for such special assessment.

APPEAL from chancery court of Hinds county.

HON. LAMAR F. EASTERLING, Chancellor.

Suit by the City of Jackson against the First National Bank, in which, after its disclaimer and dismissal as to it, the bill was amended and filed against the Union Savings Bank & Trust Company. Motion by defendant to withdraw its answer and for leave to file special pleas denied and decree for plaintiff, and defendant appeals. Affirmed.

*Chambers & Trenholm,* for appellant.

By way of a short reply to the brief filed on behalf of the appellee, appellant desires to say that it does not deny that a paving lien may by a statute be made superior to all other liens where the other liens arise after the enactment of the law, and for that reason appellant does not contend that the lien of its deed of trust is superior to the paving lien, if the paving lien be valid.

The appellant relies upon the many imperfections of the proceeding, its tax title and the unconstitutionality of the act. On this question of constitutionality appellee based its contentions upon three propositions: (1) That the act in question was unsuccessfully attacked in the Edwards House case (45 So. 15); (2) that appellant having appealed with *supersedeas,* the question of redemption is not before the court, no sale having been made; and (3) that the lien is enforced through a judicial proceeding, and that therefore a redemption period is not necessary.

Appellee states that this proceeding is identical with the proceeding in the Edwards House case, but overlooks the fact that in that case, the city declares the improvement necessary by an ordinance of January 7th and specified the material to be used in an ordinance of February 4th, and approved the plans and specifications by an ordinance of April 19th, and thereafter gave notice to the occupants of the land to make the improvements to-wit: On April 22nd, the court laid particular stress upon this. In the instant case there is no ordinance specifying what material should be used, and no ordinance adopting the plans and specifications, and no showing that any such plans and specifications were ever prepared. Furthermore, section 3011 of the Code of 1892, was incorporated in the first ordinance in the Edwards House case by the statement that the city was proceeding thereunder. That section is limited to improvements to be paid for by special assessments, either by special assessment or by use of the general improvement fund, and section 3. is so worded as to make it clear that the Board must by its ordinance signify its intention, as to which method will be used. This the board did not do in the ordinance upon which to base a special improvement at the expense of the general fund, and since the city let a contract for the work before giving notice to the property owners to do the paving

themselves, these property owners may have reasonably supposed that no effort would be made to levy special assessments against their property until too late to file protest against the improvement.

In the Edwards House case the court quoted from the opinion in *Greenville* v. *Harvie,* 79 Miss. 754, to the effect that if the tax was to be levied, it should be so determined at the very beginning of the proceeding, so that the property owners would have the opportunity to protest.

In the Edwards House case it was shown that the city did not construct the paving until after notice to the property owners, and failure on their part. In the instant case the inference from the record is that the city commenced to construct the paving before giving notice to the property owners to do the work themselves. At all events, it had made a contract for the work before such notice was given.

In the Edwards House case the statute was attacked for double taxation, for the taking of private property for public use without compensation, and upon the "front-foot Rule." In the instant case the sufficiency of the proceeding is attacked for very serious irregularities, and the constitutionality is attacked upon a ground which, so far as we can find, has never been before the court.

It is true that no sale has been made of the property here involved, but it was necessary, to prevent a sale from which the property could not be redeemed, that appellant appeals with *supersedeas* until the court could pass upon the case.

It cannot be that appellant must take the risk of the loss of its property by a sale from which there is no redemption, in order to have this court pass upon the validity of the proceeding, the constitutionality of the statute, and the effect of the sale for state and county taxes. It must be remembered that appellant was not

the owner of this property when this proceeding to improve the street was commenced, had no notice of the proceeding to improve the street when commenced, had no notice of the proceeding, either directly or through the trustee in its deed of trust, had no right of protest either by itself or by its trustee aforesaid and no right to appeal from the assessment for the cost of the improvement. Having become the owner, and finding what it considered a void assessment against the property, it clearly has the right to have the legality of this assessment passed upon by the highest court.

Appellant must confess some surprise at the proposition that because the lien was enforced by a judicial proceeding, that the constitution does not have to be complied with. Stated in another way, this would be to say that the legislature and the courts are supreme, and that the constitution must bow down before them; That the legislature may provide for a sale of land for *ad valorem* taxes through a court proceeding, without further providing for a redemption. The constitution provides a period during which the property owner may save his money and redeem his property and this right cannot be taken away from him by enforcing a special assessment or any other tax by a judicial proceeding. Perhaps many of the rights of a property owner may be protected in such a proceeding, but the right of redemption is not protected in the proceeding here provided for.

Note the inconsistency of the two propositions: (1) That because an appeal has been taken before sale in the judicial proceeding provided for the enforcement of the lien, the question of whether or not a redemption period is provided cannot be considered, no sale having been had; (2) because it is a judicial proceeding by which all the rights (?) of the property owner can be protected, that a period of redemption is not necessary.

Appellee overlooks the fact that no personal decree can be taken in this case, and that if this court should affirm the decree of the trial court, a sale would necessarily result, unless the appellant saw fit (or in the case of a poor person, was able) to pay the amount declared to be a lien on the property. The *supersedeas* has simply had the effect of stopping the sale, and then, if a sale should finally result and the amount of the city's claim not be realized, appellant would be liable upon the appeal bond for the damages caused by the delay. It is to prevent this sale, from which the legislature has provided no redemption, in spite of the constitution, that the appeal is taken. Therefore if it is a judicial proceeding in which all the rights of the property owner may be protected, one of those rights being a right of redemption the question of whether or not the property owner has a right of redemption is properly before this court.

We reaffirm, therefore, that the Act in question is plainly in violation of article 79 of the state constitution, and for that reason must be condemned.

*W. E. Morse,* for appellee.

### Points to be Discussed.

First: Is a lien under a deed of trust superior to a lien for special improvement?

Second: Does signing of the notes by a property owner estop subsequent owners of the land from asserting any irregularities in the proceeding?

Third: Are the statutes constitutional?

First: Sections 3411 & 3412, of the Code of 1906, states that this lien is paramount to all other liens, state and county taxes excepted. This statute is so plain on its face that it cannot be misinterpreted because the plain intent and purpose is to make this lien paramount to all other liens; and while this question has not been passed

upon directly by our state court yet it has been passed upon directly by our statute; it has been passed upon by other courts and they have uniformly upheld the right of the legislature to make this lien paramount to all other liens (28 Cyc., page 1202) states with reference to priorities that "a lien upon land for special improvement levied against it can be made by statute paramount to all other liens or claims against property." For example a lien for assessment may be superior to a prior mortgage, judgment, or mechanic's lien. This ruling has been upheld in the courts of Illinois, Louisiana, Minnesota, Missouri, New Jersey, Pennsylvania, Washington and other states.

Nor is the making of this lien paramount to other liens impairing contracts, for the reason that the laws and statutes were in force at the time of the making of the contract and the parties had knowledge that a condition like this might arise.

The Union Savings Bank & Trust Company seems to rely upon the fact that a sworn answer was filed before the amended bill, making the Union Savings Bank & Trust Company a party was sworn to; also to the facts that the ordinance introduced by the city of Jackson initially show the paving to be from Amite street to Wells street when in fact the paving was laid from Amite street to Boyd street.

This city introduced two witnesses and corroborating circumstances, the ordinances of the city being the corroborating circumstances. The ordinances being duplicates of ones used in the Edwards House case. The city showed that Mrs. A. E. Garner held legal title to this property at the time the special assessment was levied, and that she ratified and confirmed the special assessment by paying one-third down and executing her three promissory notes for the remainder. The court held that this was an estoppel to her and to those who claim through her of irregularity in the proceedings.

This is in accord with the holding of the courts in different states and in accord with justice and right. The work was done, the city paid out its money for Mrs. A. E. Garner's benefit upon representation of Mrs. A. E. Garner that she would pay the notes when due. Here we have a person receiving the benefit from the city, not only the benefit, but having the city use its money to pay for the paving upon the representation of Mrs. A. E. Garner that she would pay the notes.

Second: Does signing of the notes by a property owner estop subsequent owners of the land from asserting any irregularities in the proceeding?

The proceeding for any special assessment is presumed to be valid in the absence of proof that it is not. In this case where the original owner has ratified and confirmed the assessment, it ill becomes one who claims through such a person to assert defenses which were not available to Mrs. A. E. Garner.

Mrs. Garner's paying part and giving her three promissory notes for the balance would effectively estop her from setting up any defense to this action; and as it would estop her, it necessarily would estop the Union Savings Bank & Trust Company.

The states of Arkansas, Iowa, New York, Ohio, Pennsylvania and Washington hold that even where the property owners join in the petition of any improvement that it is regarded as an estoppel and a person cannot object to the assessment on the ground of irregularity in proceeding; these states with other states hold that the property owner who stands by and permits any improvement to be made without objecting to the same or who pays for the same, will not be heard to raise any complaint to any irregularities in the proceeding.

So regardless of the facts that the court allowed the city of Jackson to introduce the proper ordinances while the chancellor was delivering his opinion, the lien

would be valid and binding upon the Union Savings Bank & Trust Company for the reason that they acquired the property with no better title than Mrs. A. E. Garner had to the property. Whatever act she did that would estop herself would estop these who claim under or through her.

The recital in the ordinance that notice was given that public action was duly made, that all legal steps had been taken in the absence of proof that they had not been.

Third: Sections 3411 and 3412 of the Code of 1906, were assailed from every angle in the Edwards House case, 45 So. page 14; they have stood the acid test of time; the appellant seeks to attack chapter 260 of the Laws of 1912. One of his contentions being that it deprives a person of his property without due process of law, but the only one which he seems to seriously consider himself is that it violates section 79 of the constitution because it provides no way whereby the property owner could redeem his property for tax for special improvements within two years from date of sale.

We will take these contentions in their inverse order and discuss section 79 of the constitution which reads as follows: "The legislature shall provide by law for the sale of all delinquent tax lands. The courts shall apply the same liberal principles in favor of such titles as in sale by execution. The right of redemption from all sales of real estate, for the nonpayment of taxes or special assessments of any and every character, whatsoever, shall exist, on conditions to be prescribed by law, in favor of owners and persons interested in such real estate, for a period of not less than two years."

To begin with, this statute had no application to the question involved as the question of redemption is not before the court. The appellant, immediately after a

decree was rendered against him, took an appeal with a *supersedeas* and there was no sale of the property under execution.

Chapter 260 of the Law of 1912, does not embrace section 79 of constitution or any legislation which said section of the constitution authorizes for the reason that this is a judicial proceeding and would be controlled entirely as all other cases in court. It requires the same pleading and same proof, that the legislature saw fit to enforce these liens in this special manner. This insures the appellant more protection than it would have were the sale made as tax sales which (section 79 of constitution) protects.

Some states allow municipalities to sell land for special assessment after notifying the property owners and advertising the property for a certain length of time. Our state sees fit to safeguard the property owners and to require a judicial proceeding; and the lien upon the property cannot be enforced without it having been in a judicial manner prescribed by statute; this in and of itself obviates the necessity of section 79 being incorporated in or provision made for section 79 in chapter 2160 of the Laws of 1912.

Appellant contends that there is a taking of property without due process of law; the United States supreme court has repeatedly held that the state has the right to determine by its legislature all special improvements. And if there is a benefit to the property by the special improvement there is no taking of property without due process of law and it is left in the discretion of the state to say whether or not the property has been benefited. *Wellzinski* v. *Greenville*, 85 Miss. 393; *Macon* v. *Petty*, 57 Miss. 373; *Simon* v. *Craft*, 182 U. S. 427, 45 L. Ed. 1165; *Iowa & C. R. Co.* v. *Iowa*, 160 U. S. 389, 40 L. Ed. 467; *Rogers* v. *Peck*, 199 U. S. 425, 50 L. Ed. 256; *Pittsburg & C. R. Co.* v. *Backus*, 154 U. S. 421, 38 L. Ed. 103; *French* v. *Barber Asphalt Pav.*

*Co.,* 181 U. S. 324, 45 L. Ed. 879; *Tonawanda* v. *Lyon,* 181 U. S. 389, 45 L. Ed. 908; *King* v. *Portland,* 184 U. S. 61; 46 L. Ed. 431; *Goodrich* v. *Detroit,* 184 U. S. 432, 46 L. Ed. 637; *Chadwick* v. *Kelly,* 187 U. S. 540. 47 L. Ed. 293; *Schaefer* v. *Werling,* 188 U. S. 516, 47. Ed. 570; *Shepherd* v. *Barron,* 194 U. S. 553, 48 L. Ed. 1115; *Field* v. *Barber Asphalt Pav. Co.* 194 U. S. 618, 48 L. Ed. 1143; *Seatle* v. *Kellerher,* 195 U. S. 351, 49. L. Ed. 232.

As to what is held to be sufficient notice of proceedings in order to constitute 'due process of Law' see *Paulsen* v. *Portland,* 149 U. S. —, 37 L. Ed. 637. Appeal may not be required in order to afford due process of law. *United States* v. *Heinze,* 218 U. S. 532, 58 L. Ed. 1139; *Standard Oil Co.* v. *Missouri,* 224 U. S. 270, 56 L. Ed. 760.''

The tax sales under which appellee claims to cut off the city of Jackson is invalid on its face: because they acquired the property from Mrs. A. E. Garner and were the owners of the property before the same was sold for taxes. It was agreed in the lower court that the notice of the sheriff was served upon the Union Savings Bank & Trust Company who purchased the same in the spring of 1917 for the 1916 taxes.

To allow the Union Savings Bank & Trust Company to set up a tax title which they acquired against themselves, so as to cut off the lien of the city would be inequitable, unjust and a fraud upon its face.

Taking it all and all, we think the case ought to be affirmed for the reasons that this lien is paramount to all other liens, state and county taxes excepted, for the reason the procedure was regular, that after notice was served on Mrs. A. E. Garner, she did not protest, did not contest the assessment and did not appeal, but on the other hand she paid for the special assessment and gave three promissory notes for the balance due; further, that the law is constitutional and is not affected

by section 79 of the constitution as the lien is enforced by a judicial proceeding which amply protects the property owner and wherein he can use all defenses available to him in a court of equity.

ETHRIDGE, J., delivered the opinion of the court.

The city of Jackson filed suit against the Union Savings Bank & Trust Company to collect certain special assessments levied upon certain property in the city of Jackson under chapter 260, Laws of 1912, for the cost of paving North street. It was alleged in the bill that the board of mayor and commissioners passed a resolution and ordinance declaring such improvements necessary; that said resolution was passed and published as required by law; that the majority of the resident owners of said street, or any part thereof, did not file a protest against the same as provided by law; that the board of mayor and comissioners caused the paving to be laid by contract, and levied a special assessment under the provisions of chapter 260, Laws of 1912, against the said property then belonging to Mrs. A. E. Garner, describing the property specifically; that the owner, after due publication and the filing of the specifications as required by said act, failed to make the improvement within the time specified; that the city, after giving thirty days' notice to the owner of the property, constructed said improvement in front of said property, kept an account of the cost thereof, and reported the same to the board of mayor and commissioners; and that the same was duly assessed as required by law.

It is further alleged that Mrs. Garner recognized the proceedings and the assessment, and paid part of the costs thereof in cash, and gave her notes for the balance, under the provisions of the act of 1914 (Laws 1914, chapter 256) authorizing such an arrangement. It is alleged that the property then belonging to Mrs. Garner afterwards

came into the possession of appellant, and that it was bound by the lien against said property.

It is alleged that the complainant city, through its proper agents, did all that was required of it by chapter 260, Laws of 1912, by giving notice and then assessing and paving, and did all other things required by said act; that demand for the amount of the cost of such paving then done was made and payment refused. The bill prayed for a decree in the amount due, and for a lien on the property for said amount, and the appointment of a commissioner to sell the land to pay the same.

The appellant denied the allegations of the bill that the city had proceeded according to law in ordering the street paved, in giving notice, and in levying a special assessment; denies that Mrs. Garner was the owner of the property; denies that a majority of owners did not protest; denies that she failed to make such improvement; and denies practically all other allegations of the bill; but admits that the property came into its possession; but denies that such property was ever bound or remained bound by any lien.

The city introduced an ordinance or resolution passed on the 4th day of June, 1912, reciting that said paving on North street between Amite and Wells streets is necessary, and giving notice of its intention to pave same and that the owners of property residing thereon might, within ten days after the completion of the publication, protest against the same by filing protest with the city clerk. The city also introduced a resolution dated or passed on July 3, 1912, reciting that no sufficient protest had been filed by the property owners within ten days after the completion of the publication of the ordinance or resolution of June 4, 1912, and directing the street commissioner to advertise for bids for said paving, and directed the city engineer to prepare plans and specifications for said work. The street commissioner reported on March 4, 1913, that the paving be made with

asphalt, and finding the total cost of paving and grading to be forty thousand two hundred ninety-four dollars and ninety-three cents, and that the city's portion of this paving was seventeen thousand seven hundred sixty-five dollars and fifty-two cents, and that of the property owners twenty-two thousand five hundred twenty-nine dollars and forty-one cents; that the total frontage was six thousand five hundred thirty-three and four tenths feet, giving the rate per lineal foot. The report gave the amount to be assessed to the property affected in this suit as follows: Paving and grading, two hundred seventy-five dollars and eighty-seven cents; water pipe, two dollars and ten cents; total, two hundred seventy-seven dollars and ninety-seven cents. At the same meeting an ordinance was passed levying the special assessment according to said report, and reciting that it was ordered by the board of mayor and commissioners that the general improvement fund should not be used for said special improvement, and that the cost thereof should be assessed against the property owners, and that no protest had been filed, and that the owners, after notice, had failed to improve the said street, according to the plans, within thirty days after the order was passed, and that after thirty days had passed (after the twenty days allowed) the street commissioner duly gave notice to the owner of each piece of property to be assessed of the necessity therefor, and the said owners still did not make the same, or any part thereof, or protest against the making of same; and ordered the costs to be apportioned against the several owners according to the report of the street commissioner and the city engineer.r

On April 15, 1913, an ordinance was passed and was introduced in evidence, reciting the several matters as above set forth, and that such notice was published two weeks notifying the property owners that the assessment had been made out and filed with the city clerk subject to the inspection and objection of the

property owners, and that said assessment had remained on file more than fourteen days after the publication of said notice was completed, and that no objections had been made by any property owners or other persons to said assessment, and approved the said assessment so filed.

On the 30th day of April, 1912, Mrs. Garner executed a deed of trust to secure a debt to the Union Savings Bank & Deposit Company for six hundred and twenty dollars, at eight per cent; on August 3, 1912, another deed of trust on the same property was executed to secure two hundred dollars; and on October 16, 1912, another for two hundred dollars.

Proof was introduced by the city showing title in Mrs. Garner.

It further appeared that on April 2, 1917, the sheriff sold the lot, 80x160 feet, for the taxes for the year 1916. This assessment described the property as 80x160 feet north of Loeb five-acre lot 6, North Jackson. The description in the deed involved in this controversy is as follows: That portion of 5 A. lot No. 6, on Daniel's Official Map, beginning at a point one hundred sixty feet north of the southwest corner of said lot at the intersection of North and Asylum streets (as now laid off and not as laid off on Daniel's Map), and on the east line of North street, thence north with the east line of North street eighty feet, thence east one hundred sixty feet, thence south eighty feet, thence west one hundred sixty feet, to point of beginning.

The original suit was filed against the First National Bank, which disclaimed ownership and denied liability. Thereupon an amended bill was filed making the Union Savings Bank & Trust Company the sole defendant, and the bill was dismissed as to the First National Bank. After the Union Savings Bank & Trust Company filed its answer, it sought to withdraw its answer and filed special pleas, challenging the propriety and legality of this

proceeding by which it was substituted in the place of
the First National Bank. The first five assignments of
error deal with this action of the court in this behalf.

We think in legal effect the bill filed was an original
bill against this defendant, and, as the answer was filed
to the merits, it is not reversible error for the court to
refuse leave to withdraw and file the pleas in question.

Appellant moved to strike the notes of Mrs. Garner
made exhibits to the bill from the record, because it is
alleged that they attempt to set forth a secret lien.

We do not think there was any error in the court's re-
fusal to strike out the notes, or that in any manner prej-
udiced the appellant. The three notes were testified to
by the city clerk, and there was a motion by the appellant
to exclude these notes from the evidence. The notes
were admitted for the purpose of showing recognition
of the liability of the assessment on the part of Mrs.
Garner, and as showing acquiescence on her part in the
proceedings of the city, and for this purpose we think
were competent.

It is assigned for error that the court erred in refusing
to exclude the ordinance and the report of the city en-
gineer, and that the court erred in rendering any decree in
favor of the appellee, and in decreeing that the appellee
had a lien on the property involved and that the property
be sold.

The act of 1912, chapter 260, is attacked as being un-
constitutional:

First, because it is said that it violates section 79 of
the Constitution of 1890, which reads as follows: ''The
legislature shall provide by law for the sale of all delin-
quent tax lands. The court shall apply the same liberal
principles in favor of such titles as in sale by execution.
The right of redemption from all sales of real estate, for
the nonpayment of taxes or special assessments, of any
and every character whatsoever, shall exist, on condi-
tions to be prescribed by law, in favor of owners and

persons interested in such real estate, for a period of not less than two years."

And, second, that it is a taking of property without due process of law and the equal protection of the law, in violation of the fourteenth amendment to the Constitution of the United States.

The most serious question presented is the question as to whether the act in question violates section 79 of the state Constitution. The provision of this section that "the right of redemption from all sales of real estate, for the nonpayment of taxes or special assessments, of any and every character whatsoever, shall exist, on conditions to be prescribed by law, in favor of owners and persons interested in such real estate, for a period of not less than two years," is one of vital importance to property owners.

Chapter 260, Laws of 1912, does not, in terms, provide for the redemption of property sold in pursuance of its provisions. Indeed, there is nothing in the chapter bearing on the question of redemption after the sale shall be made. It is contended by the appellee that the special assessments named in this section do not include improvements of this kind, but relate to local taxes. We do not think this contention is sound. The improvement here sought to be made is by a special assessment, that is, the funds for making the improvements is derived from a special assessment against the property, and the language of the Constitution is for "taxes or special assessments, of any and every character whatsoever;" and this, certainly, includes the scheme of chapter 260, Laws of 1912. However, it does not follow that the act is void because it has no provisions for redemption. In our opinion the constitution itself confers the right of redemption. The legislature may impose reasonable conditions on the right to redeem under the constitution, but the right cannot be defeated by the legislature neglecting or failing to provide a scheme

by which it may be done. The courts will afford a remedy in case the legislature furnishes none, and equity has jurisdiction of a suit to redeem independent of the legislature. So the owner may tender to the buyer the amounts of the purchase money and costs, with interest, and, if the buyer refuses, the owner may resort to equity and redeem and have the conveyance canceled.

It is said that the act violates the federal Constitution in denying equal protection of the laws, because under section 8 of the act, chapter 260, Laws of 1912, it is provided that the property owners actually residing on property owner by them, and included within that part of any street ordered to be specially improved, may file a protest with the mayor and board of aldermen against the proposed improvement, and, if a majority of such property owners shall protest against the proposed improvement, then the improvement shall not be made. It is contended that this section discriminates against owners having property fronting said street but who do not live on the property and may not be residents of the city or state.

Section 9 of the act gives every person, whether a resident or not, or whether occupying property fronting the improvement or not, the right to be heard and his complaint considered. This section gives each person full right to be heard upon the question of making the improvement and of any legal invasion of his right that he may desire to present to the board.

As we view the two sections, section 8 is a limitation in the nature of a veto, legislative in character, provided a majority do not consent thereto. Numerous laws and regulations depend upon the consent of the people to be affected, and it has never been understood that a nonresident has any rights affecting the establishment of regulations of a governmental character.

The act of the board in passing on the necessity for the improvement, or the judgment of the board in re-

gard thereto, may be made by the legislature to depend upon the approval of the resident inhabitants of the particular territory. This in no manner denies nonresidents equality of the law, for it is the equal protection of the law, and not the equal right to make laws, that the Constitution guarantees.

It is insisted that the act violates the fourteenth amendment to the federal Constitution because it takes the property of persons without due process of law. As pointed out, section 9 gives to property owners, whether resident or nonresident, the right to appear and propound any objection they may have to the scheme, and to challenge it in any respect where it affects them, while section 20 of the act provides for notice of the assessment, and section 21 of the act for a hearing on the objection to the assessment, and it is provided that when the assessment is approved, subject to appeal allowed in section 22, chapter 260, Laws of 1912, the assessment shall become final, and may be enforced in the manner provided in the act. Section 22 grants an appeal to be taken to the circuit court in accordance with section 81 of the Code of 1906, and that the judgment on appeal shall be as provided by that section. We think these sections give the due process of law required by the fourteenth amendment.

Our court, in *Western Union Tel. Co.* v. *Kennedy,* 110 Miss. 73, 69 So. 674, held that injunction would not lie to restrain a collection of taxes on an assessment made by the Railroad Commission, though there was no provision in that act for appeal, except *certiorari,* under section 91, Code of 1906, and that *certiorari* was the exclusive remedy.

In *Wolford* v. *Williams,* 110 Miss. 637, 70 So. 823, this court, speaking through Mr. Justice Potter, held under Swamp Land District Act that an appeal was the exclusive remedy. In the second syllabus of that case it was said:

"Where landowners were legally notified of proceedings for the establishment of a swamp land district and failed to appeal from the decision of the board of supervisors, they cannot enjoin the collection of taxes due on such swamp land district on the ground of irregularity in the proceedings."

In *G. & S. I. Railroad Co.* v. *Adams, Revenue Agent,* 85 Miss. 772, 38 So. 348, it was held that *certiorari* was the proper remedy to review the proceedings of the Railroad Commission in assessing property, and that, although the law limited the review to questions of law appearing on the face of the record, the court could review a mistaken finding of fact contrary to law, or the making of an order beyond its powers.

We think in this case that Mrs. Garner being the owner of the property at the time of the making of the improvement, and having full notice of the proceedings and of the assessment made against the property, and having recognized the rightfulness and liability of the proceedings by paying a part of the assessment, and giving notes for the balance, the question cannot now be raised because her remedy was by appeal. The bank having made its contract through which it ultimately derived possession of the property subsequent to the enactment of the statute, and with full knowledge of the power of the city to make the improvement and impose the costs thereof on the property, by which the costs would become a lien upon the property paramount to all other liens, save that for state and county taxes, it took the property subject to these provisions and cannot defend upon any mere irregularity in the proceedings. It was never contemplated that a lienholder, or subsequent purchaser, could litigate anew these questions.

The bank took only such right as Mrs. Garner had, and, while not liable on her note, the property is liable for the city's demands. Neither will the sale for taxes by the sheriff, and the purchase thereof by the bank, pro-

tect the bank from the payment of this demand. The taxes were a charge upon the property, and it was the duty of the bank to pay the charge upon the property. It cannot escape or shut out the city's lien by permitting the property, which it bought incumbered with the taxes which were due by its grantor and which were made by statute superior to the lien on the property, by this method. The chancellor having reached the same conclusion, the judgment is affirmed.

*Affirmed.*