FORD *et al. v.* SMITH *et al.*

(Division B. November 9, 1931. Suggestion of Error Overruled December 7, 1931.)

[137 So. 482. No. 29541.]

Ruth Campbell and Campbell & Campbell, all of Yazoo City, for appellants.

**Wise & Bridgforth,** of Yazoo City, for appellees.

**Ethridge, P. J.,** delivered the opinion of the court.

The complainants, Mary Coats Ford and others, filed a bill against the defendants, Lem Smith, I. Levy, and others, setting up that one John Smith formerly owned certain lands involved in the subject-matter of the suit, and that he made a last will and testament in which he devised his lands to his wife for life, and, after her death, to seven of his children for their natural lives, and to the children of the several children named in the will in fee, reserving and making an annuity of one hundred dollars a year in favor of one of the children, who, by the terms of the will, was to take no other interest than the annuity of one hundred dollars per annum during her lifetime. The will also provided that no partition of the real estate should be made during the life of any of the children named.

This will, in full, reads as follows: ''I, John Smith of the county of Yazoo and state of Mississippi do hereby make and publish my last will and testament intending thereby to dispose of all wordly estate of which I shall be possessed at the time of my decease.'

''1. I direct that all my just debts, including my funeral expenses be paid by my executor.

"2. I give and bequeath to my beloved wife, Catherine, all my personal property, including debts and choses in action, that shall survive me.

"3. I give to my said wife all my real estate for the term of her natural life, and after her death to my children named as follows: Rhody, Annie, Bettie, Peggy, Ike, Harvey and Adam, for the term of their natural lives, each to have an equal interest therein, and upon their deaths, or the deaths of either or any of them, his, her or their share or interest shall go to his, her, or their heirs in fee simple, and in default of heirs such interest or interests shall revert to my estate and descend to my right heirs in fee simple.

"4. If any of my children named in article 3, shall die before me without issue living at my death, their life interest devised in article 3, shall go to my children already named surviving me and they are to have a life estate therein, and upon their deaths the said interest shall descend as is provided in article 3. But if my said children dying before me shall leave issue living at my death, such issue shall take the share of their parent in fee simple.

"5. It is my desire that no partition of my real estate shall be made during the lives of any of my children hereinbefore named.

"6. I bequeath to my daughter Kittie, one hundred dollars a year for her life, and direct said sum to be paid to her on the first day of March each year, and such annuity shall be a charge upon all my real estate, but is not to be payable in any year when by reason of an overflow, or any other cause, the income of said estate does not exceed the actual expenses incurred in cultivating the same. If my said daughter Kittie should die during any year before the time of payment of said annuity, the said annuity shall not be due and payable for that year or any portion of it. My said daughter Kittie is to have nothing from my estate except this annuity,

and when the word heirs is used herein, 'as my heirs' or 'my right heirs,' the said words are not meant to include the children of my daughter Kitty, or their descendants, but they are expressly excluded.

"I hereby appoint my wife, Catherine, the executor of this my last will and direct that as such she shall not be required to give bond.

"In witness whereof I have hereunto set my hand this 12th day of April, 1883.

his<br>
JOHN X SMITH<br>
mark

"Signed by the said testator, John Smith, as and for his last will and testament, in the presence of us who at his request in his sight and presence and in the presence of each other, have subscribed our names as attesting witnesses.

"R. A. PARKER<br>
"J. C. DEETS."

The will was duly probated on the 3d day of November, 1883.

The wife of John Smith died subsequent to the probation of the will, and a partition of the possession of the lands was made in 1894 between the children of John Smith, deceased. The bill in the partition proceeding is not before us, but the report of the commissioners making the division and the decree of the court is in the record. Under this report of the commissioners, and the decree confirming it, the gin, the store and dwelling, the offices and church, and the grounds in connection therewith, and a common right of way to the back side of the place were set aside in common. The commissioners then set aside to William Jones lots 6, 8, and D, according to a map, with a right of way fifteen feet in width off the west end of lot 9; to Ann Bass they allotted lots 7, 9, and E, as per description and map; and then set aside to Ike Smith, Adam Smith, Henry Smith, Peggy Jones, and Bettie Hall the remainder of the lands in severalty. To

Harry Smith they allotted lots 1 and A; to Peggy Jones lots 2 and B; to Adam Smith lots 3 and C; to Bettie Hall lots 4 and G; to Ike Smith lots 5 and F, together with a right of way fifteen feet in width off the west end of lot G, as per description.

Ike Smith during his lifetime was married three times, and there were children by each marriage. He died in 1913, and his wife by the last marriage and her children were living upon the property set aside by this decree to Ike Smith. About 1919, they began dealing with the defendant I. Levy, who furnished them supplies and took deeds of trust during different years upon the property set apart to Ike Smith. The deeds of trust were signed by the wife, Kate Smith, and some of the children of Ike Smith. About the first day of March, 1919, a lease was executed by Kate Smith, the widow of Ike Smith, to the defendant I. Levy, leasing her undivided interest in the John Smith estate, Ike Smith having been one of the heirs to said property which is known as the Mount Zion plantation. The lease was for a term of three years, and recited a consideration of three hundred fifty dollars annually for each of said years, and recited that it was understood and agreed that, when all indebtedness between the said Kate Smith and Isadore Levy should be liquidated, then Levy would return her said place.

The bill filed by the complainants was for a cancellation of the several deeds of trust, and for an accounting for the lands at the rate of three hundred fifty dollars per annum during each of the years from 1919 to the date of the filing of the bill, and to have the true interests of all the parties in the said lands declared, and for a decree against I. Levy, Kate Smith, Sam Smith, Scott Smith, and Lem Smith, for complainants' pro rata share of the rents at said rate per annum, and for a proper decree protecting the interests of Kittie Lewis, annuitant, who, it was alleged, had not been paid her share by the children and wife of Ike Smith upon the lands set apart

to him and in accordance with an agreement that each of the children taking under the will would pay their pro rata part, and prayed for general and special relief as the facts might warrant.

The defendant I. Levy denied that he had ever taken possession of the property under the lease above referred to, and that he had furnished the tenants, Kate Smith and her children, during each of the years from 1919 to the filing of the suit, and that the crops produced had ever amounted to the costs of production, and stated that, under the terms of the will, Kittie Lewis had no right to the annuity. It was further contended by Levy that he was not liable for the share of the tenants out of possession, because no lien was impressed or existed upon the crops in their fee; that their right of action, if any, was one personal against the other cotenants and to charge the land itself with the payment thereof. He further set up that he had acquired the property, set apart in the partition proceedings to Ike Smith, at a tax sale, and that the period for redemption had expired, and that consequently the complainants had no interest in said lands.

There was a decree pro confesso taken against all the defendants, except I. Levy, and the bill was dismissed as to him, from which decree dismissing the bill as to I. Levy this appeal is prosecuted.

By reference to the will of John Smith, above set out, it will be seen that no partition of the real estate should be made during the lifetime of any of his children. The bill shows that one of the children is still living. It is competent for a person making a will to prevent the alienation or disposition of the property during the period of time that he may make restrictions on alienation under section 2765, Code of 1906, section 2117, Code of 1930, known as the two donee statute. This was expressly held in the case of Crawford v. Solomon, 131 Miss. 792, 95 So. 686, 687, wherein the court said: "It is

urged by the appellant that this provision against alienation is void, but we think that it is not void, and that under the 'two donee statute' (section 2765, Code of 1906; Hemingway's Code, section 2269) it is competent for a person making a will to limit the right of alienation during the period therein provided for. This seems to have been expressly held in Leigh v. Harrison, 69 Miss. 923, 11 So. 604, 18 L. R. A. 49.''

Therefore, under the will through which all of the parties claim title, John Smith being the common source of all parties, no division of the fee could be made during the lifetime of any of the children. The partition that was made must therefore be a partition merely of the possessions of the land conveyed to the children named in the will by that instrument. Inasmuch as under the will the tenants must hold the fee in common during this period, the possessions of any of the tenants in common are the possessions of all the tenants entitled to the possession thereof. The possessory rights conferred by the decree could not carry the right to the fee, and as the heirs of the several children became vested with an interest in fee, upon the death of their parent, in the whole estate, none could acquire hostile rights to the others so long as any of the children were living. To so hold would be to make the will ineffective in regard to the prohibition against partition. The heirs claiming under the will could not hold in violation of its express provisions. The portion set apart to Ike Smith under the decree of partition was a mere possessory right, and the heirs of Ike Smith became vested at his death, not with the title in fee to the land set apart to him in the possessory partition, but with an undivided one-seventh interest in the entire property. This undivided one-seventh interest could not be separated and segregated from the right of the other children or their heirs during the lifetime of any of them. Therefore the possession of Kate Smith and her children did not operate to set the

statute of limitations in motion, and the only title which she and her children could convey by deed of trust was such title and right as they possessed in the estate. Consequently, neither they nor Levy acquired adverse rights to the complainants during this period.

The chancellor held the tax title valid in Levy's favor as to certain parts of the lands, and invalid as to certain other parts, on account of the description. He held that the complainants could not raise the question as to his relation as mortgagee to Kate Smith and her children; that the title under the tax title statute had ripened into Levy so far as the complainants were concerned, as to the lands properly described in the tax deed and assessment roll.

We think the chancellor was in error in so decreeing; Levy, being a mortgagee of tenants in common with other persons, could not acquire a tax title adverse to them. Union Savings Bank & Trust Co. v. City of Jackson, 122 Miss. 557, 84 So. 388. At page 576 of the Mississippi Report (84 So. 388, 392) upon this point we said: "The bank took only such right as Mrs. Garner had, and, while not liable on her note, the property is liable for the city's demands. Neither will the sale for taxes by the sheriff, and the purchase thereof by the bank, protect the bank from the payment of this demand. The taxes were a charge upon the property, and it was the duty of the bank to pay the charge upon the property. It cannot escape or shut out the city's lien by permitting the property, which is bought incumbered with the taxes which were due by its grantor and which were made by statute superior to the lien on the property, by this method." See, also, Watson v. Vinson, 108 Miss. 600, 67 So. 61; Hauer v. Davidson, 113 Miss. 696, 74 So. 621; Humphrey v. Seale, 125 Miss. 207, 87 So. 446.

The purchase at the tax sale by Levy, as to the heirs of John Smith, deceased, operated as a mere payment of taxes, with the right to have each of the parties and

their interest in the common property charged therewith. The chancellor held that the defendant I. Levy was not accountable to the complainants for the proceeds of cotton or products grown upon the place, and purchased by him from the defendant Kate Smith and her children. We think that this is true under the case of Pennington v. Purcell, 145 Miss. 543, 111 So. 577, and the chancellor's action in this regard is approved.

The mortgages given by Kate Smith and her children to I. Levy described the interest conveyed therein as a one-seventh interest in the property of John Smith, deceased, and described in the pleadings. As Ike Smith, the husband of Kate Smith and father of fifteen children, left fifteen children as heirs, it is manifest that the interest of Kate Smith and her children was not a one-seventh interest in the entire estate, but one-fifteenth of one-seventh for each of those signing the deeds of trust, and, under the will and facts of this case, the complainants are entitled to have their interest properly described in the mortgages, and they should be so reformed as to convey the proper interest of the parties signing them.

For the reasons indicated, the judgment of the court below is reversed, and the cause remanded for further proceedings in accordance with this opinion.

Reversed and remanded.