## MOORE v. COLLISHAW.

A., claiming title, entered upon land, the owners of which were beyond seas, and held adverse possession until 1828. B. then purchased a distinct title and entered. *Held*, that, as the possession was not adverse to the absent owners until the act of 1815, and as it ceased before the expiration of the fifteen years allowed by that statute, A.'s title was not perfected; and B. not claiming A.'s title, could not tack his subsequent possession to that of A., so as to complete the period required by the statute as a bar.

A tenant in common mortgaged the whole estate, and remained in actual posses-
sion.  If the intention was not to hold adversely to her co-tenant, the mortgage
does not operate as a constructive ouster: and there being evidence that her
intention was not to oust .her co-tenant, whether there was constructive ouster
is for the jury:  Per BELL, J.

In error from the District Court of Philadelphia.

*April* 3.   Caspar Sylvius died in 1793, seised of certain real
estate.   His heirs were three sisters, Joanna Hartman, Anna
Sabina, Catherine Sylvius.  Anna died abroad, and her estate
descended on her two sisters.

Catherine Sylvius had two sons, Conrad and Henry Goeble, by
her first husband, and three daughters, Catherine, Louisa, and
Dorothea Pilaster, by her second husband.

Henry Goeble, on the death of his uncle Caspar, entered under
a claim of right to the whole property.   Joanna Hartman brought
an ejectment, for the shares of herself and her sister Anna, and
recovered two-thirds of the estate.   Henry Goeble conveyed to
Kreider, who continued to receive the rents and profits of the
remaining third.

In 1820 and 1824, Joanna mortgaged the whole of the premises,
and the land was sold by the sheriff thereunder, in 1828, to one
under whom defendants had title; since that time, until this suit
brought in 1846, the defendants had been in possession.

The plaintiff was the child of Dorothea Pilaster, and, according
to the verdict, held the estate of her mother in her own right, and
in the right of her deceased sisters, Catherine and Louisa, and of
her aunt Anna Sabina, by descent.

The defendants held as purchasers under the mortgage of Joanna
Hartman.

Two questions were made as to the statute of limitations : 1.
The defendants contended, that there had been an adverse posses-
sion in Kreider, as to one-third of the land, prior to 1828, per-
fected by possession for twenty-one years.

It was shown, that he and Henry Goeble, his vendor, had had
actual possession of the whole until 1802; from that time he held
one-third.

The title to this third was then vested in Anna Sabina and
Catherine Sylvius; Anna Sabina died abroad, and her share
descended on Mrs. Hartman and Catherine Sylvius; Catherine
Sylvius died in Germany, about 1817.

Up to 1815 the statute did not begin to run, by reason of her
absence beyond seas.   Before the fifteen years allowed by that

statute had expired, Kreider was ousted by the defendants, claiming, as has been stated, under Mrs. Hartman's mortgage; consequently, not having Kreider's title, there was no evidence of an adverse possession by Kreider, or those claiming under him, perfected under the statute.

2. They also set up an ouster by Mrs. Hartman. She recovered two-thirds of the property by an ejectment in her own right and that of her sister Anna Sabina, in 1802. In 1820–24 she mortgaged the whole estate, and the defendants held this title. They alleged that these mortgages were an ouster of Mrs. Hartman's co-tenants, as to so much as she continued to hold possession of, until the sale. But the plaintiff proved by Mrs. Hartman, that she had brought the suit for her sister's share, and that she never read or heard the mortgages read, and also she said that she did not mortgage the whole estate, but that her sister's share always had remained in the property. They further proved that Dorothea, the plaintiff's mother, was lunatic from 1803 till her death, in 1842, or thereabouts.

SHARSWOOD, J., instructed the jury that the defendants, not having Kreider's title, could not set up his adverse possession, for he was a mere trespasser; and such an one, although in possession for twenty-one years, might abandon, and if he did, a stranger could not set it up.

Whether there had been an ouster and adverse possession by Mrs. Hartman, was left as a fact to them.

The exceptions to the charge were, in saying that the defendant could not avail himself of Kreider's possession, and in submitting to the jury the question of his abandonment, there being no evidence to justify it.

*Bleight* and *F. W. Hubbell*, for plaintiffs in error.—The judge mistook the issue: it was not whether we might tack Kreider's possession to ours, but whether we had shown an adverse possession by him for twenty-one years. If this was shown, there could be no abandonment. The title was perfected by the adverse possession; and, when perfected, is as incapable of abandonment as any other title; it can only pass by grant: 2 Barr, 184; 5 S. & R. 236; 3 John. 267. Admitting that Mrs. Hartman did take possession for her co-tenants, yet the mortgage by her afforded conclusively, and as matter of law, the presumption of an ouster: 10 S. & R. 182; 3 W. 77; 1 W. & S. 184; 9 W. 363. After such an act, it was not competent for her, as against the mortgagee at

least, to restore the seisin of her co-tenant by her own consent merely.

*Watts,* contrà.—There was no evidence of an adverse possession within the statute, by Kreider. The owners of the land were beyond seas during all the time. Hence, until the act of 1815 took effect, the possession did not commence to be adverse. From 1815 we had fifteen years to bring an action: 12 S. & R. 330. Before that period expired, Kreider's possession ceased: it did not pass to the next tenant. He claimed, under a distinct title, the mortgage and sheriff's sale. It is well settled that such a title cannot be tacked to the next occupancy, unless the party claim under the former tenant. The mortgage by Mrs. Hartman was not conclusive evidence of an ouster; she says she never meant to mortgage the whole, nor did she afterwards hold adversely. Besides, the statute could not then begin to run; for the owner was a lunatic, and so continued until her death, in 1844. This point is, however, not in the case, not having been excepted to.

*April* 11. BELL, J.—By the record, it appears but two exceptions were taken on the trial to the charge of the presiding judge. These are: first, to so much of it as instructed the jury the defendant could not avail himself of Kreider's possession; and, second, to that part of it which submitted to the jury, as one of fact, the question of abandonment by Kreider, without any proof of it. In this court, other supposed errors in the charge have been assigned. But, it is clear, we cannot notice them without a violation of legal propriety. The rule is, the complaining party must take his exceptions before the rendition of the verdict, and, if required, point out, specifically, the errors he avers have been committed. When this is done, he is not permitted to exercise his ingenuity in the discovery and suggestion of defects, after the charge is filed; defects which, had they been brought to notice at the moment, might have been corrected; or which, perhaps, owe all their apparent importance to the absence of some addition or explanation, given orally to the jury, but in the after effort to condense the written charge, overlooked by the judge, as of little consequence in reference to the exceptions actually taken. In the instance before us, it is more than probable the instructions, as filed, were reduced to writing after the trial, with an eye to the objections then made, and with the special view of presenting them fairly. We may, I think, safely assume that much was said to the jury in elucidation of the points decided, not found

here. It is, therefore, but doing justice all round, to confine the plaintiff in error to the exceptions taken when, familiar with the subject, his comprehension of the charge embraced everything of which he thought there was any shadow of reason to complain.

Looking to the record alone, it is not very easy to ascertain what use the defendant below attempted to make of Kreider's possession. No written proposition was submitted in connexion with it, upon which the opinion of the court was asked. Taking the language of the charge, I should incline to think the effort was to tack together the possession of the defendant and that asserted in Kreider, and thus to eke out a holding for twenty-one years, adverse to the title of the plaintiff. But as the defendant does not claim under Kreider—each, in fact, standing to the other in the relation of an utter stranger—the effort necessarily failed for want of continuity. If such was the aspect the defence assumed —and we have the word of the plaintiff in error, that this was the view of it taken by the judge—the instruction that the defendant could not avail himself of any claim or title that might have resided in Kreider, is correct. Indeed, this is not now controverted. We might, therefore, assume, there is no fault in this portion of the charge; for if, in an obvious point of view, from which the case can be fairly regarded, the opinion expressed may be sustained, it is certainly not the duty of the court of error to search for other grounds, perhaps not presented to the trying tribunal, from which the charge might be successfully assailed. It is now, however, averred, the president of the District Court fell into a mistake, in supposing the defence was founded, in any degree, upon an attempted union of Kreider's possession with the subsequent occupancy of the defendant. It is said, the averment upon which the defendant below rested was of an outstanding title in Kreider, perfected by operation of the statute of limitations, which of itself was sufficient to bar the plaintiff's right of entry, without regard to merit or demerit in the defendant. This does not appear of record, and consequently, as already intimated, we might decline to consider what fell from the court, as applied to this proposition. But were this difficulty waived, it is not perceived how, under the evidence, a substantive title in Kreider or his heirs can be deduced from lapse of time under the statute. Admitting in him an actual adverse possession of one-third part of the premises, after the recovery by Elizabeth Hartman—a position which, if necessary, might well be controverted—it is impossible, under the proofs, to establish such a continuous length of possession, as is essential to

the creation of an estate. Catherine Sylvius never was in this country, having lived and died in Germany. The latter event took place about the year 1817. She was, therefore, unaffected by the statute, until the passage of the act of March, 1815. This repealed the *proviso*, of the older statute, in favour of persons beyond seas ; but, by implication, allowed to such fifteen years, or up to March, 1830, to make their entry or bring action. As against them, therefore, a title under the act of limitations could only be acquired by an adverse holding up to the latter period, though twice twenty-one years might have elapsed before that time: Eakin *v.* Raub, 12 S. & R. 330. This immunity of course extended to those deriving an estate through them, during the running of the time allowed. Now, conceding to Kreider and those claiming under him, everything they could reasonably ask, it cannot be pretended his distinct and hostile possession continued after the year 1825. The land was then judicially sold as the property of Elizabeth Hartman, who before had conveyed the whole estate in mortgage, as belonging exclusively to her. It was so purchased, and the defendant below now claims so to hold. There is no allegation of actual possession by Kreider of any portion of the premises after that sale ; nor is there the slightest pretence for saying, the purchaser from the sheriff, and those who succeeded to his title, claimed to hold in Kreider's right. The *onus* of showing the continuance of his hostile possession—if, indeed, such ever existed—lay upon those asserting it, and it must be proved affirmatively. It cannot be established upon the presumption of a continuance flowing from the fact of its former existence. This is defeated, at least *primâ facie*, by the sale made, irrespective of any supposed right in Kreider.

These observations apply, if possible, with still greater stringency to that portion of the property derived through Anna Sabina. Kreider's possession of this, under Henry Goeble's pretended conveyance, was formally ousted by the recovery in 1802, through the agency of Catherine Hartman. As to this, there was, after that year, not the shadow of adverse holding by Kreider, or any one claiming through him.

To prevent misapprehension, it may be proper to say, the remark just made is not to be accepted as conceding that the exclusive possession of Mrs. Hartman, as the representative of two of the tenants in common, can be made, constructively, to enure to the benefit of Kreider, as against the remaining tenant, even by the payment to him of one-third of the profits of the land. As it is

U

unnecessary to decide it, this point has not been considered by us with a view to the expression of an opinion.

The grounds upon which our conclusions are based, render the question of abandonment, raised on the trial, also immaterial. Whether a title, resting solely on the bar of the statute, can be set up as outstanding, by a stranger to it, in discomfiture of an older title; and, whether it may be held relinquished, as against such stranger, by the acts of the original trespasser, short of conveyance indicating an intent to abandon, need not now be discussed. Admitting the opinion expressed below to be, in the abstract, incorrect, no harm has been done by it, for, as already shown, Kreider owned no title from which the question of abandonment, as put by the judge, could spring. It was sufficient for the purposes of the plaintiff, that Kreider's possession, if he had any, was uprooted by the sale under the mortgage.

I have said no other errors have been properly assigned. But I am reluctant to leave the case without remarking, the court below was right in leaving to the jury, as a question of fact, whether the possession of Elizabeth Hartman, connected with the mortgages executed by her, operated to oust her co-tenants, children of Catherine Sylvius. Admitting that the mortgages, standing alone, might work this effect, yet, where the statute has not closed on the title, it may be prevented by a contemporaneous or subsequent disclaimer of hostile intent, which, in Sailor v. Hertzogg, 2 Barr, 182, is said to be equally efficacious for this purpose, with a legal or equitable conveyance. Whether adverse or friendly, is always a question of intention, and, as was decided in Criswell v. Altemus, 7 W. 581, "it is sufficient to prevent the possession from being adverse, that the party taking possession *intends* to occupy the land, subject to the will of the owner." Here, Mrs. Hartman testified she never dreamt of holding adversely to her relatives, and, as reconciling the apparent inconsistency of the mortgages, that she was not aware of their contents, in this particular, when she executed them. Surely, on the question of intention, these combined facts were rightly referred to the jury.

Judgment affirmed.