## HUMPHREY *et al.* v. SEALE.

[87 South. 446.  No. 21621.]

TENANCY IN COMMON.   *Occupancy by one tenant with payment of taxes
    insufficient as ouster.*

The occupancy and cultivation of land by one tenant in common
    and her husband, together with the payment of taxes on the
    land and the purchase of outstanding tax titles, does not amount
    to an ouster of the other tenants in common.

APPEAL from chancery court of Pearl River county.
HON. D. M. RUSSELL, Chancellor.

Separate suits by J. F. Humphrey and others against
Mrs. Nancy B. Humphrey Seale. Decree for defendant,
and plaintiffs appeal. Reversed and remanded.

*D. E. Sullivan,* for appellant.

The court will see from the foregoing statement that
Nancy B. Seale, one of the tenants in common, in all of
this land in controversy, and a tenant in common in actual
possession of the land and getting the uses and benefits
arising therefrom with the consent of her cotenants per-
mitted all of this land to sell for taxes except that part
sold by J. F. Wheat to Eli Seale and actually bought in
a part of it at the tax collector's sale and bought another
part of it from the state after it had been forfeited to the
state for taxes, and that later her husband, Eli Seale,
while living upon this land and getting all its uses and
benefits and paying the taxes thereon for a number of
years, permitted the northwest quarter of the southeast
quarter, section 23, to be sold to the state for taxes in the
year 1893 for the taxes of 1892 and later, the husband, Eli
Seale, acquired whatever title the state had by a purchase
from the state's vendee. It was the duty of Nancy B.
Seale and her husband Eli Seale, as well, after he came
upon the scene, to keep the taxes paid on this land. They
not only breached this duty and betrayed the trust rela-
tion which they bore to the other parties in interest but
they are now actually endeavoring to take advantage of
their betrayal of this trust and hold this land as their own
under said tax sales as herein shown. The law is so well
settled that the tenant in common cannot acquire title to
the common estate, at tax sale, that citation of the au-
thorities seems needless. The rule is that it is the duty of
all the tenants in common to pay the taxes on the common
estate, and no one tenant can buy the land at a tax sale
and acquire a tax title for the reason that it is his duty

to pay the taxes in the first instance and prevent the sale. If one tenant in common does buy the land at a tax sale, the title does not thereby pass to him but the purchase merely operates as a redemption of the land and the payment of taxes, and the title remains in the several cotenants as before. We call the court's 'attention to the following authorities, on this point: *Harrison* v. *Harrison*, 56 Miss. 174; *Mcgee* v. *Holmes*, 63 Miss. 50; *Fox, et al.* v. *Coon, et al.*, 64 Miss. 465; *Wise Bros.* v. *Hyatt*, 68 Miss. 714; *Cohea, et al.* v. *Hemingway, et al.*, 71 Miss. 22.

It seems that Nancy B. Seale and her husband, Eli Seale, undertook to make assurance doubly sure in getting the title to this land through tax sale. The defendant herself, bought that part of the land which she had allowed to sell for taxes, and after she married her husband, Eli Seale, very kindly undertook the job of getting the balance of the land sold for taxes after they married. They seem to have two strings to their bow with the hope that if Nancy's string broke, that at least Eli's would hold. It is well settled law in this state as well as many others, that what the wife, who is a cotenant cannot do, in the way of cheating her cotenants out of the land by buying at a tax sale and buying up the tax title, her husband cannot do for her. It is held, that, on the ground of public policy, whatever disqualifies the wife from acquiring the title from her cotenants also disqualifies her husband. We call the court's attention to the following authority in this state and in other states on this point. *Robinson* v. *Lewis*, 68 Miss. 69, and also numerous authorities in note to 116 Am. St. R. P. 371.

*Mounger, Ford & Mounger,* for appellee.

As to the parcels of land claimed by the appellee, Mrs. Nancy B. Seale, we freely admit that the rule of law applicable in her case, is the rule of law which obtains in the case of one tenant in common claiming title against her fellow tenants under a deed of conveyance in severalty

for the tract of land. This rule is nowhere better stated than in the case of *Highnite* v. *Highnite,* cited copiously in appellant's brief, and reported in 65 Miss. at page 447. The court there speaking through COOPER, C. J., said:

"The complainants should have had a decree for partition. There is no sufficient evidence of an adverse holding by the cotenant in possession, to put in operation the statute of limitations as against the others. True it is, that he bought the land, or took a deed therefor from the widow of the common ancestor, but there is no evidence that complainant had notice thereof or ever heard that she claimed to be the owner of the whole interest in the land. A tenant in common out of possession, has a right to rely upon the possession of his cotenant as one held according to the title and for the benefit of all interested until some action is taken by the other evidencing an intention to assert adverse and hostile claims."

The converse of this rule is true, that a tenant in common in possession denying his fellow-tenant's title and claiming title in severalty with the knowledge of his cotenants, may acquire title after the lapse of the statutory period.

We understand the rule of law to be as stated in the Highnite case, that where a tenant in common in possession of land, begins an adverse claim against his cotenant, that it is necessary before the statute of limitations shall begin to run, that the cotenants of such tenant, shall have notice or knowledge of such adverse claim. This rule is also stated in the case of *Bentley* v. *Callaghan,* 30 So. 709, where it is said that as between cotenants such adverse possession, must be with such actual notice to the cotenants or shown by such acts of repudiation of their claim, as are equivalent to actual notice to them.

This rule is well stated in Ruling Case Law, Vol. 1, at page 742, where it is stated: "A cotenant's sole possession of the land becomes adverse to his fellow tenants by his repudiation or disavowal of the relation of co-tenancy between them; and any act or conduct signifying his in-

tention to hold, occupy and enjoy the premises exclusively, and of which the tenant out of possession has knowledge, or of which he has sufficient information to put him upon inquiry, amounts to an ouster of such tenant."

Now we are sure that appellant's counsel will not contend that appellee did not in the years 1881 and 1882, when she purchased this land, repudiate and disavow the relation of cotenancy and begin to claim in hostility to that of her contenants.

If it were required in behalf of Eli Seale that he show the same repudiation that would have been required of his wife and the same amount of notice that would have been required of her, then we say that the proof overwhelmingly would show both of these facts, However, the rule of law as applied to these parcels of land, is correctly stated in the case of *Gardner* v. *Hinton,* reported in 86 Mississippi at page 604, where the rule is stated to be:

Adverse possession in this class of cases does not depend upon actual notice. The principle which requires actual notice or acts of repudiation equivalent thereto, applies only to cases where there is some relation between the occupant and the holder of the legal title, which imposes upon the occupant the obligation of giving notice, either actually or shown by such acts of repudiation of their claim as are equivalent to actual notice, as a condition precedent to the assertion of any hostile claim by him.

Bearing in mind that neither the appellee, Nancy B. Seale, nor the appellants, had ever claimed these parcels of land but had always, prior to 1889, recognized the title of J. F. Wheat, then, it follows that Eli Seale, upon his purchase of this land, was under no obligation to anyone. His possession of the land was from its inception, hostile to any claim by appellee or the appellants, and while it was shown that appellee and the appellants had both actual notice of his claim and knowledge of such facts as necessarily charged them with notice, yet the law did not put this obligation upon him. While it was abun-

dantly shown that appellants knew of this claim and had never disputed it nor made an adverse claim of any kind whatsoever, yet as to these lands claimed by Eli Seale, the decree was correct and would have been correct had no notice or knowledge whatever been shown or imputed to any of the appellants.

The rule of law stated by counsel for appellants, as set out in the case of *Robinson* v. *Lewis,* 68 Miss. 69, to the effect that the husband or wife of a tenant in common is disqualified from purchasing an adverse title to the other co-tenants, is correct, but this rule of law has no application here, for the reason that Nancy B. Seale had acquired, in 1893, the title to this particular forty-acre tract of land through more than twelve years' adverse possession, and the appellants had lost whatever claim of title they ever had to this tract of land and the appellee, Nancy B. Seale, was not a tenant in common in 1893, with the appellants in this case. The rule of law cited by counsel for appellants, that the three-year statute of limitations is not applicable to a tax sale made in favor of one co-tenant, is correct, but there is no life in this proposition of law, for the appellants, for the simple reason that in 1913, when Eli Seale purchased this tax title from E. F. Tate, his wife had been in the actual possession and occupancy of this land for more than twelve years before the tax sale in March, 1893, and had acquired title by adverse possession, and she had also been in possession of this land continuously from the year 1893 to the year 1913, and for a period of twenty years, and her title was undoubtedly vested by adverse possession. If the tax title were void for any reason, then Nancy B. Seale, is the present owner. but if the tax sale were valid, then Eli Seale is the owner, and in either event, the chancellor was correct in his decree in dismissing the complainant's bill, because as recited in the decree, the proof showed that their claim of title to any interest in this land had been wholly lost, abandoned and waived.

SAM C. COOK, P. J., delivered the opinion of the court.

The record on appeal covers two cases which were tried together on the same state of facts by the chancery court of Pearl River county, Miss.

J. F. Humphrey, Annie Paine Fornea, and Mary A. Fornea filed their bill in the chancery court of Pearl River county against Nancy B. Humphrey Seale, and charged that the complainant J. F. Humphrey and the other complainants and the defendant were the only son and daughters of Basil H. Humphrey, who died intestate on the 28th day of February, 1863, owning the following described land now situated in Pearl River county, Miss.

Lots 1 and 6 and the north half of lot 5 in section 22, township 3 south, range 18 west, and the entire southwest quarter of section 23, township 3 south, range 18 west, and the west half of the southeast quarter of section 23, township 3 south, range 18 west, now situated in Pearl River county, state of Mississippi. They charged that the above-described land descended to the complainants and the defendants as tenants in common in equal parts, and that they still owned and held the land as tenants in common at the time of the filing of the bill. They prayed that the land be sold, and that the proceeds be divided equally among all the parties interested. At the trial the suit was dismissed as to all the land in section 22, and the suit proceeded as to the land in section 23.

Nancy B. Humphrey Seale answered the bill, and admitted that the complainants and the defendant were the sole surviving heirs of Basil H. Humphrey. She denied that the land descended to the complainants and to her as tenants in common, and denied that Basil H. Humphrey was the owner of land at the time of his death. She alleged that all that part of the land in section 22 and the north half of the southwest quarter and the north half of the south half of the southwest quarter of section 23 was bought by her at a tax sale on the 28th day of April, 1881,

and that immediately after the delivery of the deed to her she took adverse possession of the land, and continued to hold and claim it adversely ever since. She alleged that she did not claim the land in section 22 or the south half of the south half of the southwest quarter of section 23, but that her husband, Eli Seale, purchased this land from J. S. Wheat. The original answer is silent as to the west half of the southeast quarter of section 23, township 3 south, range 18 west. She does not deny the allegations of the bill as to this last-described land, nor does she in any way make any explanation about it in the original answer. She does not allege in her answer as to the land she claims under a tax sale that she took adverse possession of this land with the knowledge of her cotenants, or that she in any way brought home to them knowledge of the fact that she was claiming this land adversely; in fact she denied that the land was held, or ever had been held, by the parties as tenants in common. Later the defendant filed an amended answer, and denied that Basil H. Humphrey died seized and possessed of the west half of the southeast quarter of section 23, township 3 south, range 18 west, and also that she did not claim, at the time of filing the suit, the south half of the southwest quarter of the southeast quarter of section 23, but the same was claimed by her husband, Eli Seale, who purchased it from J. F. Wheat on March 23, 1899, and that Eli Seale had been in adverse possession of said land since that time. She further alleged that the north half of the southwest quarter, section 23, was sold to the state for taxes prior to the year 1862, and that she bought the same from the state on July 12, 1882, and that she has had adverse possession of the same continuously since that time. She alleged that the northwest quarter of the southeast quarter, section 23, was sold to the state for taxes in 1893, and that on February 22, 1910, the state sold the land described as the northwest quarter of the southeast quarter, section 23, to E. F. Tate, and on February 3, 1913, E. F. Tate conveyed the northwest quarter of the

southeast quarter of section 23 to Eli Seale, and that Eli
Seale went into immediate possession of the land after
purchasing it, and remained in possession for more than
three years, and defendant pleads the three-year statute
of limitations of actual possession.

The other suit filed in said court was by J. F. Humph-
rey, Anna Paine Fornea, Mary A. Fornea, against Nancy
B. Humphrey Seale, and the Salmen Brick & Lumber
Company, Limited, a corporation, and is in regard to tim-
ber on part of the land in the first suit.   The bill charged
that the three complainants and the defendant Nancy B.
Humphrey Seale were the sole heirs of Basil H. Humph-
rey Seale, deceased, being the only son and daughters of
the deceased, and that Basil H. Humphrey died the owner
of the southwest quarter of section 23, township 3 north,
range 18 west, then in Hancock county, but now in Pearl
River county, Miss., and that the land descended to the
complainants and the defendant Nancy B. Humphrey
Seale, as tenants in common, and that the complainants
and the defendant are still the owners as tenants in com-
mon of said land.

The bill charged that the defendant Nancy B. Humph-
rey Seale had recently sold and conveyed to the defend-
ant the Salmen Brick & Lumber Company, Limited, all
of the merchantable timber on said southwest quarter, sec-
tion 23, with fifteen years to cut and remove the timber
from said land.   The bill charged that the defendant
Nancy B. Humphrey Seale only had an undivided one-
fourth interest in said land and timber, and therefore had
no right to convey the entire interest to the Salmen Brick
& Lumber Company, Limited, and that such conveyance
constituted a cloud on the title of the complainant.   Re-
lief was sought by the bill.

The two defendants filed a joint answer to this bill. They
admit that Basil H. Humphrey died the owner of the south-
west quarter of section 23, township 3 south, range 18 west,
as charged in the bill, and that the said land descended
unto the complainants and the individual defendant as

tenants in common. They set up title to the timber in the Salmen Brick & Lumber Company, Limited, and title to the land in the defendant Nancy B. Humphrey Seale, except the south half of the south half of the southwest quarter of section 23, which they allege is owned by Eli Seale, the husband of Nancy B. Humphrey Seale. They set up title in the defendant Nancy B. Humphrey Seale, to the north half of the southwest quarter and the north half of the south half of the southwest quarter of section 23, township 3 south, range 18 west, by tax collector's deed to her made the 20th of April, 1881, and adverse possession by her under said tax deed, but the answer does not allege that notice of her claim of adverse possession of this land was brought home to the other tenants in common. The answer sets up title in the south half of the south half of the southwest quarter of said section 23, in Eli Seale, the husband of the defendant, by a deed from B. F. Wheat dated March 23, 1899, and adverse possession of the land by Eli Seale under said deed. The answer does not show how Wheat acquired title to this land.

A plat is attached in the case of *J. F. Humphrey et al.* v. *Nancy B. Humphrey Seale* under her tax deed, and described as the north half of the southwest quarter and the north half of the south half of the southwest quarter and the north half of the southwest quarter of the southeast quarter, section 23, and also showing the land claimed by her husband, Eli Seale, as the south half of the south half of the southwest quarter and the northwest quarter of the southeast quarter and the south half of the southwest quarter of the southeast quarter, section 23. The land claimed by the defendant Nancy B. Humphrey Seale, bought at tax sale amounts to one hundred forty acres, and the land claimed by her husband, Eli Seale, bought from individuals, amounts to one hundred acres. The land on which the timber was sold by Nancy B. Humphrey Seale and her husband to the Salmen Brick & Lumber Company, Limited, is described as the southwest quarter of section 23, and all of this land is claimed by Nancy B.

Humphrey Seale by virtue of her purchases at tax sales, except the south half of the south half of the southwest quarter which is claimed by her husband, Eli Seale, as already stated.

The record discloses that the claim of title propounded by Nancy B. Humphrey Seale to the land in controversy rests upon a tax collector's deed for a part of it, and upon a deed from the state for the remainder, the state's claim being based upon a tax sale, and both of the tax sales occurred while Nancy B. Humphrey Seale was occupying the land. As we read the record, all of the land in controversy originally belonged to the father of the appellants and of the appellee, and that they were his sole heirs after the death of his widow, and therefore tenants in common of the land. When the land was sold for taxes Nancy B. Humphrey Seale was living on the land and making no claim of ownership thereto except as a tenant in common. She never claimed that she lived on the land long enough since purchasing it at the tax sales to perfect her title by adverse possession.

All of the parties lived on the land for several years after the death of their father, but afterwards they all moved away except their mother and Nancy. After this Nancy and her mother paid the taxes, and it seems that they cultivated some of the land. After the other members of the family went away, until 1880, when a part of the taxes was not paid on a part of the land and it was sold for the taxes of 1880, Nancy bought the land at the sale. In February, 1882, Nancy married Eli Seale, who came to live with her on the land, and they have lived there since that time, and used the same for their support. In 1893 a part of the land was sold to the state for taxes. In 1913 the state conveyed the land to one E. F. Tate, who afterwards in 1913 conveyed the same to the husband of Nancy.

We have thus far gone into the details of the facts to show how the land was occupied and the payment of taxes and the failure to pay the taxes upon a part of the land,

and the acquirements of these titles by Nancy and her husband. The parties to this suit were tenants in common of the landed estate of their deceased father, and they all, of course, possessed the coequal right to live upon and cultivate the land. The land was not of great value for agricultural purposes, and it appeared that the appellee cultivated that part of the land which was worth cultivating, and sold a part of the growing timber, or such part of same as was consistent with good husbandry.

Under the facts it seems to us that under the circumstances there was nothing to put the other tenants upon notice that the tenants in possession were claiming, or would claim, the land as their own. Under the law it was the duty of all the tenants in common to pay the taxes, and no one tenant in common can acquire a tax title, since it is the duty of all to pay the taxes. *Harrison* v. *Harrison,* 56 Miss. 174; *McGee* v. *Holmes,* 63 Miss. 50.

Nancy Seale bought a part of the land which she had allowed to sell for taxes. Afterwards her husband bought a part of the land which had been forfeited for taxes. We are of the opinion that the husband was also disqualified to set up the title acquired by him. *Robinson* v. *Lewis,* 68 Miss. 69, 8 So. 258, 10 L. R. A. 101, 24 Am. St. Rep. 254; *Hoyt* v. *Lightbody,* 98 Minn. 189, 108 N. W. 843, 116 Am. St. Rep. 371, 8 Ann. Cas. 984.

To sum up, we believe that the facts of record do not warrant a reasonable belief that the appellees were holding the possession adversely to their cotenants. There was nothing to put them upon notice of an adverse claim of title to the land. On the contrary, every fact and circumstance is entirely consistent with occupancy and use of the lands as tenants in common. Giving due weight to every fact, the appellants did not understand, and reasonably so, that the occupancy and use were subservient to the relationship of tenants in common.

The assumption of witnesses in the immediate neighborhood is not impressive. Their understanding of ownership was based largely, if not entirely, on the living on the

place and cultivation of the land, and the sale of some of the lumber.

We are therefore of the opinion that the facts and circumstances do not warrant a finding that there was ouster.

*Reversed and remanded.*