## Hurst v. J. M. Griffin & Sons, Inc.

In Banc.   May 22, 1950.

No. 37509  (46 So. (2d) 440)

Suggestion of Error Overruled Sept. 25, 1950, 47 So. (2d) 811.

(381)

H. C. Stringer and W. M. Everett, for appellant.

O. B. Triplett, Jr. and A. B. Amis, Jr., for appellees.

**Alexander, J.**

Hurst filed bill to remove the clouds arising out of the assertion by appellees to a greater interest than one-fifth in the SE¼ NE¼, Section 9, Township 6 North, Range 12 East, Newton County.

The original owner of the forty acres was Sarah Horn, a patentee from the Government. She died intestate leaving four living children and the children of a deceased child. One of the heirs, Jack Horn, sold in 1911 to B. F. Carter "my one-fourth undivided interest" in the land. He owned in fact only a one-fifth interest. In 1929 Carter sold to J. P. Pace "all my right, title and interest" in the said land. After the death of Pace, intestate, his heirs in 1946 executed a warranty deed to J. M. Griffin and Sons, who conveyed same to appellee. In 1948 the remaining heirs of Sarah Horn executed deeds to Hurst.

The status of co-tenancy thus persisted throughout this period and unless the interest of the heirs other than Jack Horn had been divested by adverse possession or ouster,

Hurst's title to an undivided four-fifths interest would be good and his bill should have been sustained. The chancellor dismissed the bill on the ground that the deed from Carter to Pace purported to convey, under claim of right, the full title to the land, and that appellees had through themselves and their predecessors in title acquired title by adverse possession. Hurst appeals.

We do not find that the deed from Carter to his "right, title and interest" signalled any sufficient assertion of complete title or dominion such as to constitute constructive notice or effect an ouster of the other heirs, even if we were called upon to accept literally the expressions in Peeples v. Boykin, 132 Miss. 359, 96 So. 177. We therefore do not review the cited case, nor Davis v. Gulf Refining Co., 202 Miss. 808, 32 So. (2d) 133, 34 So. (2d) 731, except to reveal that in the opinion on suggestion of error, provoked by an attack upon Peeples v. Boykin, the latter case although its literal language was quoted, was viewed askance and the opinion sought and found reinforcement in the fact of actual hostile and adverse possession known to the co-tenant.

In conceding that a co-tenant may be ousted by adverse possession of another, we canvass the record for such evidence.

Complainant rested his case upon the deraignment of his title showing a co-tenancy. However, upon cross-examination he stated that he lived about a mile and a quarter from the land and knew J. P. Pace and his heirs. One of the Horn heirs had several years before asked Hurst to buy the land. Particular stress is placed upon the knowledge by Hurst of Pace's claim to ownership. It would be appropriate to develop the fact that Pace's claim was based upon the assumption that the other Horn heirs were dead and that his claim was conditional. Yet when Hurst bought the interests of the Horn heirs he acquired whatever title they then had. Such title, absent adverse possession and ouster, was an undivided four-fifths interest.

We pass therefore to the adversity of possession of Pace and his successors in title as against the Horn heirs. They had moved to another county. There was no testimony that they knew of the character or extent of possession by Pace and his heirs.

██ ██ Purchase of the interest of one co-tenant is deemed to be in recognition of the rights of the others. Alsobrook v. Eggleston, 69 Miss. 833, 13 So. 850. There is a presumption that one co-tenant's possession is not hostile to the others. Hauer v. Davidson, 113 Miss. 696, 74 So. 621. ██ ██ Occupancy by co-tenant who pays taxes is wholly insufficient. Humphrey v. Seale, 125 Miss. 207, 87 So. 446.

The test is not that of mere ten years' occupancy even under some claim. The occupancy by Pace and his heirs was quite consistent with his status as co-tenant. He cultivated five or six acres only, the lands were unfenced and for the most part "wild" and used as common pasturage. He cut no timber and his cutting of some firewood was but reasonable estovers.

Appellees introduced testimony that while the land was sometimes known as the Horn lands, Pace claimed he "owned" it. There was a "reputation" that it was his. Some "thought he owned it all". To a witness who was a prospective purchaser of the timber, an attorney had disparaged the title, stating that "some heirs there would have to have it cleared up or something like that".

Ouster of the other co-tenant must have arisen from actual knowledge or as is sometimes vaguely expressed, by acts equivalent thereto. As stated, the occupancy by Pace was as consistent with the status as co-tenant as with a claim of full title. The testimony of such knowledge by the other tenants in common must be clear and convincing. Fox v. Wilkins, 201 Miss. 78, 28 So. (2d) 577. It is not enough that the possession to convey title should be apparently adverse but must be such with actual notice to the co-tenants or shown by such acts

of repudiation of their claim as are equivalent to actual notice to them. Bentley v. Callaghan's Ex'r., 79 Miss. 302, 30 So. 709; Elmer v. Holmes, 189 Miss. 785, 199 So. 84; 1 Am. Jur., Adverse Possession, Sections 54, 56. ▆▆ There being no adequate showing of adverse and actual ouster, laches is not here a defense.

No estoppel can be predicated of the silence of the Horn heirs. It was held in Scottish-American Mtg. Co. v. Bunckley, 88 Miss. 641, 41 So. 502, 117 Am. St. Rep. 763, that absence of knowledge by a co-tenant that he owned an interest and that his knowledge that the other tenant was making a loan on the property (as was done in the instant case) would not by his mere silence work. an estoppel, especially since he did nothing to lead or mislead the mortgagee. The Horn heirs had no actual notice and even if their absence be extended they would not lose their title by mere abandonment.

The bill asserts the cutting of timber by Griffin and Sons, Inc. and sets out the amounts and values thereof. The admission of such allegation by the answer would justify a decree here with credits conceded by the complaint. However there appears in the record a stipulation between counsel that the sole issue involved is the title to the land and that means rents or damages can be either stipulated or referred to a master.

▆▆ We find that the learned chancellor was in error in dismissing the bill and that the cause must be reversed and remanded solely for the ascertainment of damages and mesne rents, if any, and such adjustment of mutual accounts as may be found proper.

However, if the parties stipulate by proper showing within fifteen days from the date of this opinion an agreed amount as damages, the judgment herein will be amended so as to conclude the matter.

Reversed and remanded on issue of damages alone.

On Suggestion of Error.

**Roberds, J.**

The suggestion of error reargues the contentions originally presented. We find no reason to change the conclusions we then reached. We merely reiterate that the quitclaim deed from Carter to his "right, title and interest" was not an unconditional assertion of entire ownership of, or dominion over, the property, and did not impart constructive notice to his co-tenants that he was asserting unqualified claim of ownership to the property.

We also again emphasize that Pace's claim of ownership was conditioned upon his assumption that all of the Horn heirs were dead, which was not the fact, and that, therefore, his claim of ownership was not of such character as is required by Section 711, Code of 1942, to vest title by adverse possession, especially as between tenants in common.

Suggestion of error overruled.

**Lee, J.** (dissenting).

Since I can neither agree to, nor acquiesce in, the reversal of this cause, with deference, I feel compelled to give my reasons therefor.

It is elemental that a Chancellor's finding of fact should be sustained on appeal, if supported by substantial evidence; and that such finding will not be set aside unless manifestly wrong.

When this rule is kept in mind, the decision of the learned Chancellor, as I see it, is impervious to change for at least two complementary reasons: (A) The deed to Pace constituted color of title; and (B) Appellees' title was established by adverse possession.

On the first proposition, the deed from Carter to Pace conveyed and quitclaimed "all my right, title and interest in" the land in question. It did not purport to convey simply Carter's "undivided" interest. There

was no limitation whatever on its face. The deed was in compliance with Section 846, Code of 1942.

In the case of Chapman v. Sims, 53 Miss. 154, this Court held that a quitclaim deed is as effectual to convey title as one with general warranty; and that such deed does not deprive a claimant under it of the character of a bona fide purchaser. Of like effect are Moelle v. Sherwood, 148 U. S. 21, 13 S. Ct. 426, 37 L. Ed. 350, and Perkins v. Wisner, 171 La. 898, 132 So. 493. See also Safford v. Stubbs, 117 Ill. 389, 7 N. E. 653, 655, where it was said that a quitclaim deed "can therefore be relied on as color of title."

That Pace was in good faith as to his ownership when he went into possession was amply sustained by the evidence. Such good faith meant simply that "the person honestly believes that he has acquired a good title, although, upon investigation, it proves otherwise". 2 C. J. 201; 2 C. J. S., Adverse Possession, Sec. 170.

Under the above authorities, I think it is conclusive that Pace obtained color of title to this land.

On the second proposition, there was evidence before the Chancellor to show the following: (1) After Pace obtained his deed in 1929, he recorded it and went immediately into possession of the land; (2) He claimed it as his own, and recognized no other claimant; (3) When he found that it had been sold for the 1928 taxes, he redeemed it, and had it assessed to him for 1930; (4) He and his successors in title paid the taxes for eighteen years thereafter; (5) He cleared four or five acres, and cultivated this, together with two other patches; (6) He cut wood off of the land; (7) In 1934, he gave a deed of trust on it, which was paid off after his death; (8) He kept the rents and profits; (9) The general reputation in the community was that Pace owned it; and (10) The Horne heirs neither attempted to invade his possession, nor, in any way, questioned it over a period of 18 years.

Pace's retention of rents and profits confounds the appellant's claim. In the case of Iler v. Routh's Heirs,

3 How. 276, in holding that one co-tenant may oust another co-tenant, this Court said: "Any act of one joint tenant which is evidence of a claim of exclusive ownership, *such as taking all the rents and profits to himself will constitute a disseisin.*" (Emphasis supplied.) See also Rickard v. Rickard, 13 Peck, Mass., 251.

Besides, the execution of the deed of trust was evidence of Pace's adverse claim. Moore v. Collishaw, 10 Pa. 224; Leach v. Beattie, 33 Vt. 195.

In addition, while the cutting of timber or wood, and the payment of taxes do not, of themselves, constitute an ouster, they are evidence of such. Ewer v. Lovell, 9 Gray, Mass., 276; Peck v. Ward, 18 Pa. 506.

Moreover, this Court, in Native Lbr. Co. v. Elmer, 117 Miss. 720, 78 So. 703, 705, said: "Payment of taxes on land for 24 successive years by the party in possession was powerful evidence of the claim of right to the whole lot [and] it is some evidence that the possession was under a claim of right and was adverse."

Since this was so-called wild land, and thus evidently not desirable for farming in its entirety, or for purposes of habitation, the Chancellor doubtless attached little significance to the absence of fences or houses. Besides, Pace's home was on adjacent land. Hence, it seems to me that the evidence fully justified a finding by the Chancellor that Pace and his successors in title exercised all acts of ownership over the land of which it was susceptible.

On the contrary, shortly after the receipt of her patent from the Government, Sarah Horne moved off of this land, apparently abandoning it, and took up her abode in a distant county, where she died in 1910. While the ages of her children do not appear in the record, one of them, Jack Horne, on October 9, 1911, executed to B. F. Carter a warranty deed to an undivided one-fourth interest. Undoubtedly the other heirs must have known that they had some kind of claim thereto, but did not manifest any concern whatever about it. They neither

made inquiry as to the payment of taxes, nor undertook to collect rents or profits. This utter lack of interest in, or concern about, the land continued uninterruptedly until June 16, 1947,—37 years. Not until after the appellees had cut and removed the timber, and only then, after the appellant had gone to three of them in the same distant county for the purpose of purchasing their interest, did they show any concern. It was at this juncture that these three executed to the appellant a deed and a conveyance of their claim for cutting and removing timber. They did not assert the fact of their interest in the court, for they were not even witnesses in this proceeding. This lack of interest for 37 years, as I see it, brings them under the condemnation as pronounced by this Court in Boyd et al. v. Entrekin et al., Miss., 45 So. (2d) 848; and Alewine et al. v. Pitcock et al., Miss., 47 So. (2d) 147.

Except for the testimony of appellant himself, I have been unable to find anything in this record which differs factually from the overwhelming evidence of the appellees on the question of adverse possession. That testimony was as follows:

"Q. What sort of possession did John have? A. Well, he claimed it all the time that he was on there because he told me, he says, 'The heirs is dead', but he was mistaken. He said, well, that is what he had been informed, but the heirs were living.

"Q. And John claimed the whole thing? A. No, sir, he didn't claim the whole thing no more than without they were dead, but if they were dead he claimed the whole thing.

"Q. Well, he told you he claimed it, didn't he? A. Well he told me if they was all dead he felt like it was his." And at another place:

"Q. . . . Now, when you told him about the children being still living and that they had an interest in it, what did he say? A. He said they told him they were all dead, that was his understanding."

In the first breath, he testified that Pace had claimed the land because the heirs were dead, which would be evidence of Pace's good faith, whereas he ended up by testifying that Pace, if the heirs were dead, felt like the land was his. Although appellant seemed to know that the heirs were not dead, he made no claim in his first statement that he informed Pace of this fact. Later in his testimony, his counsel, by a leading question, injected the fact that appellant had told Pace about the heirs.

In view of the vacillation of the appellant, his lack of corroboration, his pecuniary interest, and the fact that Pace was dead, how can we say that the Chancellor was manifestly wrong if he, perhaps, gave little weight to this evidence? There is no way for us to get a picture of his demeanor. Sometimes the demeanor of a witness before the trier of fact gives a wholly different effect from that revealed by the questions and answers in the cold record.

In view of what has been said above, it is obvious that I think the decree of the lower court ought to have been affirmed.

Besides, inasmuch as the warranty deed from Jack Horne to B. F. Carter conveyed a one-fourth interest, I cannot agree with the decision of this Court that the appellees have a one-fifth interest only in this land. There are two reasons for my opposition: (a) Under Peeples v. Boykin, 132 Miss. 359, 96 So. 177, and the cases which follow it, the recordation of that deed was an act of ouster to the extent of a one-fourth interest; and (b) the reduction of interest is incompatible with, and contradictory to, Eastman, Gardiner & Company v. Hinton, 86 Miss. 604, 38 So. 779, 109 Am. St. Rep. 726.

Wherefore, I think the suggestion of error ought to be sustained.