WALKER, Justice,
for the Court.
On July 2,1974, Marie Steele filed her bill of complaint in the Chancery Court of the Second Judicial District of Hinds County to partition a 16-acre parcel of land. The ap-pellees, the heirs and assigns of Stella Kelly, claimed that they had established title by adverse possession and sought a confirmation of their title by cross bill. Holding that adverse possession had been established, the chancellor dismissed Mrs. Steele’s bill and confirmed the title in the appellees.
Marie and her mother-in-law, Stella Kelly, had purchased the land in 1945. They both lived on the land, as did J. C. Kelly, Marie’s husband and Stella’s son, after his return from the war, until Marie and J. C. separated in 1948. They were divorced in 1949. Marie has not lived on the land since the divorce, although she has visited the property on several occasions.
Stella Kelly and her family have exercised most of the incidents of control over the land since 1949. The Kellys built sever *1324 al houses and paid all the taxes. Furthermore, in 1962, Stella executed two warranty deeds, purporting to transfer the entire interest in two one-acre parcels contained in the larger tract. One piece went to Archie Kelly and his wife, and the other to Laree Kelly. The parcel sold to Laree Kelly was later foreclosed and sold to Mid-State Homes, Inc., and is now owned by Thirly Lewis and Jessie Mae Lewis. The remaining 14 acres have not been conveyed since Stella and Marie purchased the land.
The testimony gives no indication that Marie received actual notice that her former in-laws were claiming the entire interest adversely to her. Her former husband testified that they had never had a conversation about the property “because I always felt like it was ours.” Likewise, his brother Archie testified that he had never spoken to Marie about the land, and their sister, Evelyn Mack, failed to respond to a question as to whether she had spoken with Marie. In fact, Marie’s niece, Mary Ellen Young, testified that she had been present at a conversation between Marie and several of Stella’s heirs after Stella’s death in 1963. The purpose of the conversation was to settle the rights to the property, but there is no indication that Stella’s heirs ever informed Marie that they were claiming the entire interest in the land. This is the only actual communication between the parties about the land disclosed by the record.
The record, then, discloses that Marie Steele and Stella Kelly originally held the land as tenants in common, each holding a one-half undivided interest. Stella’s interest, less the two one-acre tracts deeded to Archie, and Laree descended to her heirs upon her death. To uphold the chancellor’s decision that Stella and her heirs and assigns obtained Marie’s interest in the land by adverse possession, the record must show an unequivocal ouster. Such an ouster is always difficult to establish, as the Court explained in Bush v. Quinn, 236 Miss. 895, 901-02, 112 So.2d 231, 233 (1959):
The rule which one cotenant must meet in order to oust a fellow-cotenant has been stated by this Court in these words: “In order to establish ouster of cotenants by a tenant in common in possession, the cotenants out of possession must have notice of his adverse claim either ‘from actual knowledge or as is sometimes vaguely expressed, by acts equivalent thereto’, as by conduct so unequivocal that knowledge on the part of the coten-ant out of possession must be necessarily presumed. Hurst v. J. M. Griffin & Sons, Inc., 1950, 209 Miss. 381, 46 So.2d 440, 442, 47 So.2d 811. The Hurst case further holds: ‘The testimony of such knowledge by the other tenants in common must be clear and convincing. Fox v. Wilkins, 201 Miss. 78, 28 So.2d 577. It is not enough that the possession to convey title should be apparently adverse but must be such with actual notice to the co-tenants or shown by such acts of repudiation of their claim as are equivalent to actual notice to them.’ ”
Thus, the appellees had the burden to establish that Marie was unequivocally ousted by actual notice or by conduct equivalent thereto.
The chancellor held that the ouster was established by the fact that Marie left the property at the time of her divorce. However, even if her husband’s conduct somehow forced her to leave him, such an action was clearly the result of marital difficulties and would not be notice that her interest in the land owned by her and occupied by them during the marriage was in jeopardy.
The record conclusively demonstrates that Marie never had actual notice that the appellees were claiming the land adversely to her interest. None of the ap-pellees testified that they had ever had any communication at all with Marie about claiming the property. Nor can we conclude that the acts of ownership performed by the appellees were the equivalent of actual notice. It is true that the appellees and their mother, Stella, made extensive use of the land, but this use was not inconsistent with their interest as cotenants. This Court faced a similar situation in Quates v. Griffin, 239 So.2d 803, 810 (Miss.1970):
*1325 Griffith’s possession for approximately thirty years can only be characterized as including every act of ownership that would normally be practiced by an actual owner on rural lands of this character. It included the payment of taxes, the improvement of the pasture, the repair of the houses, the repair and removal of fences, the cutting of timber for the construction of a pond, the construction of the pond, the grazing of cattle upon the land and maintaining tenants on the property. However, these acts are also those which are entirely consistent with the lawful acts of possession which may be exercised by a cotenant in possession. In sum, the acts were not inconsistent with a cotenancy.
Likewise, the appellees’ acts in this case were entirely lawful and consistent with their rights as cotenants and did not constitute notice to Marie that they were claiming adversely to her interest. See also Kennedy v. Bryant, 252 So.2d 784 (Miss.1971).
However, one of the appellees, Archie Kelly, did establish an ouster as to his one-acre tract. Archie received a warranty deed from his mother in 1962, purporting to grant the entire interest in the parcel. This deed was recorded, and Archie’s testimony indicates that he took possession of the property, built a house thereon, and continuously occupied same adversely for more than ten years. Under the rule announced in Quates, supra at 811, this evidence is sufficient to establish an ouster:
Where one or more of several cotenants convey land by an instrument purporting to vest in the grantee the fee simple title to the entire property, and the grantee is not a cotenant at the time of the execution of the deed, and the grantee records his deed in the county where the land lies, and enters into possession asserting open and exclusive ownership thereof, the co-tenants not participating in the conveyance are deemed to be ousted and on the termination of the statutory period, title by adverse possession becomes vested in the grantee.
Archie was not a cotenant at the time of the conveyance. The deed purported to convey to him the entire interest in fee simple. Since ten years had elapsed before the filing of Marie’s suit, Archie has perfected his interest in this parcel by adverse possession. See also Hardy v. Lynch, 258 So.2d 414 (Miss.1972).
Also, Marie is not entitled to the relief she seeks from Thirly Lewis, his wife, and the other parties having a recorded interest in the one acre deeded to Laree Kelly, even though those parties made no appearance in the chancery court or here. Marie could have moved for a decree pro confesso against Lewis, but she failed to do so. Griffith, Mississippi Chancery Practice § 257 (2d ed. 1950). The proof adduced at the hearing demonstrated that she was entitled to no relief, since Lewis and his predecessors in title took possession of the land and occupied same adversely under a deed from Stella for more than ten years prior to the suit. Quates, supra at 811. Consequently, the decree was properly silent as to this acre, since Marie was entitled to no relief, and Lewis had asked for none.
There is no merit to the appellees’ contention that Marie is barred by laches from demanding a partition. Our law is clear that laches provides no defense in the absence of a showing of an unequivocal ouster. Hurst v. J. M. Griffin & Sons, Inc., 209 Miss. 381, 388, 46 So.2d 440, 442 (1950).
It follows, then, that the chancellor should have dismissed the cross-bill except as to Archie Kelly, whose title to his one-acre parcel should have been confirmed. The decree properly granted no relief in regard to the one acre deeded to Laree Kelly. As to the remaining fourteen acres, Marie Steele was entitled to the partition she sought in her bill of complaint. The cause must therefore be remanded to the chancery court so that the property may be partitioned according to law.
REVERSED AND REMANDED.
GILLESPIE, C. J., PATTERSON and IN-ZER, P. JJ., and SMITH, ROBERTSON, SUGG, BROOM and LEE, JJ., concur.